Mr. Brown, did you have a chance to get everything settled? Yes, I did. Thank you. Good morning and may it please the court, pardon me. My name is T.W. Brown and I'm here today to represent the appellant Christopher Dion Bell. This appeal comes down to the meaning of two words, relevant conduct. Pursuant to statute, the parties used a plea agreement to grant the district court a legal authority it would not otherwise have. That was the power to award restitution to persons other than the victims of the offenses of conviction. And your argument is that relevant conduct is a term of art and must be construed consistently. Yes, Your Honor, that's exactly right. And that's not just my argument. That's actually a position that this court has previously taken in a case called United States v. Ferris, which was issued in 1994. But it's not just the term of art, Your Honor. It's also various other rules of interpretation, most notably the requirement of this court to interpret the plea agreement as a whole. So the term relevant conduct appears in the plea agreement twice. It appears first in paragraph 3 and then again in paragraph 6. Paragraph 3 sets out the maximum penalties that Mr. Bell faced. And the language that the plea agreement uses there is that Mr. Bell's obligation included restitution to the victims or to the community, which may be mandatory under law, in which the defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone. Now, it appears again, the term relevant conduct in paragraph 6, in the first sentence of that paragraph, which reads that pursuant to AT&T United States Code section 3663 subsection A and 3663 uppercase A, the defendant agrees to pay restitution for losses resulting from the defendant's criminal conduct, including losses resulting from relevant conduct involving other subway restaurant robberies. Now, the government argues that the language following the term relevant conduct in paragraph 6 alters the meaning of relevant conduct both in that paragraph and in paragraph 3. But in reality, a term generally means the same thing each time it is used in an instrument. Well, is that always true? I mean, words can mean different things in context. You were saying we're only construing two words. And I know we've kind of had some cases that have gone back and forth on this notion, but the overall notion is you have to construe it in context. What I'm saying to you now in this context may be different than what I would say in some other context. And so that's kind of important. And I'm just struggling with why make this deal in paragraph 6, which also influenced the overall determination of the plea, if there is no way you can ever get money for anything else, including these other subways that were robbed that are specifically mentioned in paragraph 6. Let me take your second point first. So this sort of perpissivist approach to paragraph 6 assumes an undisclosed intent about the party's desire to ensure that the other subway robberies would be compensated. But if that was their desire, they didn't draft an agreement that gets there, and that's because relevant conduct ultimately plays the same role in both paragraph 3 and paragraph 6. But we typically don't like to construe sentences as having no meaning, okay? And the problem is that if it – can you explain to me how this could have had value? Is there any context in which it could have if we're going to construe relevant conduct that way, the sentencing guidelines way? So if we're assuming that the value is making sure that the other subways receive repayment, it does not have value. That's true, Your Honor. But I don't think that matters in light of the plain text which sets relevant conduct as the hard limit on the district court's authority in both 3 and 6. And with regard to an interpretation of the superfluity point, Your Honor, which is the government's primary argument on appeal, I actually think it's the government's argument that reads out the terms relevant conduct involving in that nonrestrictive clause in paragraph 6. They read that clause as if it read that Mr. Bell agreed to pay for losses resulting from other subway restaurant robberies, which completely passes over the term relevant conduct involved. And the only way to make sense of their ultimate interpretation there is to give relevant conduct a new definition which has never been applied before, which is relevant conduct for the limited purposes of restitution. So when we're interpreting a text, we don't assume anything about the party's undisclosed intention. Well, but if we were using sort of just what, if we went out on the street corner and found somebody, you know, selling hot dogs and asked them what's relevant conduct, they would have a different definition than the sentencing guidelines. So why couldn't it not just be a regular definition? That is, it was relevant because it was robbing subways, as opposed to if you go through this whole complicated analysis of the sentencing guideline, which, again, I deeply respect and I understand that, but I don't think we have to make up some weird definition to honor the government's argument. Well, Your Honor, I'll make two points. First, returning to Judge Smith's initial question, relevant conduct is a term of art with a fixed legal meaning, and when we're interpreting the use of a term of art within a transaction within that field, we give it that meaning, that fixed legal meaning. But it's a fixed legal meaning in the sentencing guidelines. Yes, Your Honor, but it's also a fixed legal meaning that parties routinely incorporate into plea agreements with regard to relevant conduct. That's exactly what we did here, and we're stuck with that text no matter its ultimate effect. Okay, so your position is we could—this sentence was meaningless, basically, to have in here. No, Your Honor. It could never give any benefit to these other subways or whatever the government wanted or whatever. So it is meaningless, again, only if we assume that the party's ultimate attempt was to ensure recovery to those subway restaurants. That's not clear. What other intent could there be to include this specific sentence about restitution arising from relevant conduct in the subways? Yeah, the nonrestrictive clause there following the comma, including losses resulting from relevant conduct involving other subway restaurant robberies. Yeah, it was for resulting from his criminal conduct, including losses resulting from— okay, including other subway. What would be the purpose of that sentence if under the term used, defined by sentencing guidelines, you would never be there? I mean, you would never get anything out of it. That's true, Your Honor, but the sentence still has a purpose, which is drawing—making sure that Paragraph 6 is in conformity with Paragraph 3, which refers to relevant conduct, full stop, no reference to other subway restaurant robberies. But there would be no reason to have Paragraph 6 if you have Paragraph 3. What is the purpose of Paragraph 6 if there can never be any other robbery of a subway that makes any difference here? I mean, I just don't understand it. Can you—maybe I'm just not getting your point. I understand your confusion. I can understand this panel's frustration. It appears that they may have just written a bad plea agreement. Maybe that was their intent. The problem is we can't assume what their intent has to be. We're stuck with their manifested intent, given the words on the page. Mr. Brown, reading all of this, I was struck by another—thinking about another guideline. During the proceeding was guideline—and I hate to cite to things like this. There are a gazillion guidelines. 5G 1.3 ever engaged about imposition of a sentence on a defendant subject to an undischarged term of imprisonment. The government is brief. Note 2 of 2 states that the plea agreed that the sentence of imprisonment imposed in this case be ordered to run concurrently with any sentence that may be imposed by the state of Texas. And that guideline, 5G 1.3, would come into play as to whether it would be concurrent or consecutive. I was just struck by—I don't see in the briefs any cite to this particular guideline. I just was curious as to if you recall it came up during the proceeding. Of course, we can read all of this. Well, Your Honor, this goes back to interpreting the agreement as a whole. Because in paragraph 4, the parties deal precisely with that issue, whether or not the anticipated sentence in case number 1638738 should run concurrent to this sentence or not, and whether any other sentence resulting from the defendant's subway restaurant robberies. And in that paragraph, we have no reference to relevant conduct at all. We actually have a reference to a specific pending case and any other cases that might be filed based on the relationship. And I understand that during the sentencing or the run-up to sentencing, the defendant was insisting that his robbery of the other subways was relevant conduct. And again, this has to be in the record. But is there anything in the record saying that's because they want to make sure the sentence is concurrent as opposed to consecutive? Yes, Your Honor, that is in the record. That's the tail end of that objection that you're referring to. But I think the objection actually supports my argument about the meaning of relevant conduct because when my trial counsel made that objection, she's incorporating the definition found in 1B1.3. Now, it turns out she was wrong, and she ended up withdrawing that objection after both the government and the PSR addendum pointed out that robberies are treated differently under the grouping rules. So by the time we get to sentencing, there's no fight about what relevant conduct means. And that gets to another point about the agreement, which is that when the parties incorporate the term relevant conduct into a plea agreement, they're incorporating two things. One, they're incorporating the definition of relevant conduct as a term of art found in 1B1.3, but they're also incorporating the extent of the district court's ultimate findings in applying 1B1.3. And that goes to the clarity of the error we have here. The district court applied relevant conduct at sentencing and found that the other subway robberies were not relevant conduct to either offense of conviction. It nevertheless ordered Mr. Bell to pay restitution for both. And so not only do we have a clear plea agreement, but in this case we have a very clear record. And I'm not here today fighting about the evidence that goes to relevant conduct, the quantum of the amount of restitution. What I'm doing instead is just asking this court to interpret and enforce the agreement on its plain language. And I think the clarity of both the plea agreement in this case and the clarity of the record helps distinguish this case, assuming plain error applies, from the unpublished cases cited in the government's brief, which are Lanfear and Tolentino. In Lanfear, we have a situation where the plea agreement is anything but clear. The plea agreement actually outlined, that's the word that was used in the plea agreement, the defendant's scheme to cheat on his employment taxes from the years 2008 to 2011 and granted the district court full authority to award restitution pursuant to that larger scheme. The PSR then expanded on the outline from the plea agreement and found that he had in fact cheated on his employment taxes all the way from 2005 to 2011. The district court ultimately orders full restitution pursuant to the entire scheme. The defendant comes up on appeal and argues that that restitution order exceeded the amount allowed by the plea agreement. But again, this court determined that the plea agreement was at best unclear and that any argument about the meaning of its terms was subject to reasonable dispute. Not so here, because all the rules of contract interpretation point in the same direction, which is that by using the term relevant conduct, the parties intended to incorporate the definition found in 1B1.3. The government also relies with regard to clear and obvious error on an unpublished case called Tolentino. Again, in that case, we have a situation where the argument about the meaning of the plea agreement is much less clear than the meaning of the plea agreement we have here. The defendant there at one point promised to pay for all relevant conduct. And at another point, the parties used the pronoun her to refer to her criminal conduct in filing other false or fraudulent tax returns. And the defendant seized on that pronoun before this court and argued that that carved out the normal rules of relevant conduct. And this court said no. This court said when you have an agreement that specifies relevant conduct, the most reasonable interpretation is that it's incorporating the entirety of the relevant conduct definition found in 1B1.3 and not carving out small portions based on choices about pronouns. If there are no further questions, I'll see the remainder of my time. Yes, you've saved time for a vote. Thank you. Mr. Strauss? Thank you, Your Honor, and may it please the court. I would like to first talk about the standard of review, explain why plain error is the appropriate standard of review, and then I will shift into why, given the record as a whole, the district court's restitution order in this case was not plain error and was not any form of error. So first, on the issue of plain error, I think it's important to recognize that this court this is more than just a case like some other restitution cases where we've seen where the parties get to sentencing and a dollar amount is tallied and the district court announces that the restitution amount is X dollars. Nobody objects, and then they go home. And then later on appeal, there's an argument that, well, some of this restitution was not proximately caused by the defendant, and therefore it's reviewed for plain error. We don't have that here. What we have here is something much, much negotiated, planned in advance restitution order that the defendant affirmatively agreed to and is now claiming to be error. And so, as the court already knows, there was a plea agreement in this case. I think the overall context of the plea agreement from the four corners of that document, it's clear what the important parts of that plea agreement were. The defendant had committed or had appeared to have committed three separate robberies. He was facing federal charges on one robbery. He was facing state charges on one robbery. It was important to the defendant not to face additional federal charges. He didn't want that. There was a gun involved in each of these, so there's the stackable 924C charges. So he wanted to limit his federal exposure. He also wanted to be able to serve any federal sentence concurrently with the anticipated state sentence. So in the context of the plea agreement, the government agreed not to bring other charges beyond the one robbery, and the government also agreed to a Rule 11C1C provision where his time in custody would be capped and the sentence would run concurrently with the state, the anticipated state sentence. In exchange, in exchange for those agreements by the government, the defendant agreed to pay restitution, and I think the important words are, agrees to pay restitution from losses resulting from the defendant's criminal conduct, not relevant conduct, from his criminal conduct, including losses resulting from relevant conduct involving other subway restaurant robberies. Now that's on page 223 of the record. Directly above that paragraph, still on page 223 of the record, is a discussion of the fact that the defendant is facing these other charges for these other subway robberies, expressly references the fact that he's facing a state charge. So the context of the agreement is clear in that everybody knows that this defendant is possibly on the hook for three separate robberies. He's going to plead federally to one. In exchange, he's not going to face other federal charges, but he is going to pay restitution. Now let me, I want to note something that counsel said just now. He said that when the parties drafted this agreement, they were not only incorporating the term relevant conduct from the sentencing guidelines, which I disagree with, but they were also incorporating the extent of the district court's ultimate findings in the PSR in terms of what was and was not relevant conduct. But let's think about that. One of the district court's findings, and this is on page 235 of the record, the district court adopted the PSR. One of the PSR's express findings was that the defendant agreed to pay restitution for losses resulting from other subway restaurant robberies. Full stop. The defendant agreed to that. That is a finding that was in the PSR. It was unobjected to by the defendant. The district court adopted that finding. So it's very clear from this record that the district court did not see anything, you know, adverse or contrary about the notion that the defendant was going to pay for all three of these robberies. In fact, the defendant did not object to that. The defendant never objected to the notion that he was going to pay. Okay, so your problem is you have a lot of really good arguments, but the bottom line question is this whole definition of relevant conduct in the sentencing guidelines. And if that must be applied, you lose. So how do you deal with the fact that they're arguing that that has a very clear definition that is well known in this context and must be applied? I understand that, Your Honor, a couple things on that. One is the plea agreement does not say relevant conduct as defined in the sentencing guidelines. It just refers to relevant conduct in lowercase letters. Now, it refers to relevant conduct a couple different times as well. In Paragraph 4, there's just a sort of a very generic description to relevant conduct. Paragraph 6 talks about the defendant agreeing to pay restitution for losses resulting from the defendant's criminal conduct. It's broader, and again, we've already discussed within the plea agreement that this criminal conduct includes the other subway robberies. So I would say that, one, it's not used as a term of art. Specifically within Paragraph 6, it's not used as a term of art. So you're saying we don't even have to get to the word including. We just apply criminal conduct. I think that's absolutely correct. It's very clear what the deal is here. The criminal conduct is all of his subway robberies. He's agreed to pay that. And again, look at the rest of the record. The defendant never objected when the restitution tallied up the exact dollar amount for all three robberies. Not only did the defendant not object, the defendant signed an order the day of sentencing, saying that he would pay that dollar amount, and it set out what the payment plan was going to be. Again, the defendant not only did not object, he affirmatively signed an order saying he was going to pay this amount. So you're saying, though, that the term relevant conduct does have different meanings in the different places where it occurs. I do, Your Honor. I think that in the context of this agreement, which the court is to construe as a whole, giving effect to every provision, the term relevant conduct within paragraph 6 should not be construed to somehow do the opposite of what it says it does in the agreement, which is to get the defendant not paying for these robberies. So I think, as Judge Haines sort of alluded to, if you construe relevant conduct in that way, paragraph 6 is essentially meaningless. It's an inkblot. There's no possible justification for why that provision would be in the agreement when the intent was clearly the opposite. Would you agree that in some future abstract case, it would be better not to use the word relevant conduct because it is a term of art in the guidelines, and if you have what turns out to be a fairly short plea agreement, then it would be best to find other terminology to avoid that confusion? I mean, I think as—I'm from the background of civil litigation, and any time a contract gets into litigation, everybody thinks in their mind of different ways it could have been written to anticipate or preempt the issue that's now being litigated. Just as, you know, for example, the defendant could have, you know, insisted on a provision in there that said the defendant, notwithstanding anything to the contrary, the defendant is not paying restitution for these two robberies. So you could do it in any number of ways, and I agree that's always sort of a temptation to look back, but I think if you look at the time, including in the context of plain error review, not only that the defendant didn't object, but he actually— there's sort of a course of conduct and a course of performance under this contract after the plea agreement is signed. The defendant then later signs a payment plan for the full amount of the restitution. So if counsel wants to look at sort of the broader record and talk about, well, later the district court, the PSR found that the other robberies were not relevant conduct for purpose of grouping them within the term of the guidelines, that same PSR also found that the defendant had agreed to pay these things. So there's just no contradiction there. Judge Barksdale, you mentioned the issue about the concurrent sentence issue. That is in the record because it's clear that one of the— I think, frankly, what happened is once the plea agreement was signed, I think defense counsel forgot that the plea agreement specifically included that the sentence would be concurrent. And so when the PSR came out and the PSR noted that these robbery offenses are not groupable and therefore under 5G 1.3 normally you would have a thing where there are consecutive sentences, defense counsel objected to that and said, wait a minute, wait a minute. We want these to be considered to be groupable, relevant conduct under those sentencing guideline provisions because we want to make sure that we have a concurrent sentence, not a consecutive sentence. And I think the government's response to that, which is on page 260 of the record, the government's response to that objection is telling because the government says something like, well, yes, in a general sense these robberies could be considered to be all part of the same course of conduct insofar as in sort of layman's terms, right, which is what the plea agreement basically said. But they're excluded from Section 1B 1.3 considerations specifically by another guideline provision saying that you can't group robbery convictions. Now the takeaway from that though is the government then said, but this is all basically moot insofar as the defendant's objection is that they don't want to have a consecutive sentence as to the state sentence. But we've already provided for that in the plea agreement. The plea agreement says that, and it's again a Rule 111C or C1C agreement, that the sentence will be concurrent. So the government basically says this issue is sort of moot because we've already agreed on a concurrent sentence. The PSR addendum comes back and says the same thing. You know, technically this is not groupable under these guideline provisions, but it's sort of a moot point anyway because the parties have agreed on a concurrent sentence. And so at the time of sentencing, that sort of issue is withdrawn because at that point it dawns on everybody that, oh, we've already covered the concurrent sentence issue. And importantly, at sentencing, even at the time of sentencing, the defendant is at that time signing a payment plan for the full amount of the restitution. So the notion that the party's intent at the very beginning was not to have all three robberies, included with the restitution award, is flatly and absolutely contradicted by every aspect of this record. There is not a single thing in the record that shows that any party believed that restitution would not be paid for all three robberies. That first thing I want to point out— What is your analysis of my—so I understand the notion of sometimes things, you know, But my understanding of when we're looking at documents is we're not supposed to have just meaningless sentences. And so I've already exchanged with your opponent on that. What is your response to that notion? My response is I agree, Your Honor. I think the proper way, even if we weren't in a plain error posture— and I think plain error makes this an easy case because, not to digress, but there's no clear authority on point that says that restitution can't be awarded here. It's not plain error. But even if we were looking at this de novo, if this issue had been litigated in the district court, I think you're absolutely right that that is a key provision of sort of interpreting contracts, is you have to harmonize the agreement and give effects to every provision. You know, an interpretation of a contract that would render meaningless a provision, that's usually—the courts usually say, Well, that's pretty good evidence that that's not the right interpretation of the contract. So I think what we have here where the defendant's interpretation, newly raised interpretation— Again, never in the district court was this raised. The first time, as Judge Barrington said, this has sort of been raised willy-nilly on appeal is on appeal when we've had this interpretation. But it would completely render that paragraph 6 meaningless. So I think that's further proof that even if the standard of review were not de novo review, proper interpretation of this contract would be that restitution is owed for all three robberies. And that's true based on, one, the four corners of the document itself. But it's especially true if we take counsel's suggestion to sort of incorporate the scope of the district court's later findings. Because, again, one of those district court findings was expressly in the PSR, page 235. The defendant agreed to pay restitution for losses resulting from other subway restaurant robberies. That finding was never challenged in the district court. And that gets back to the plain error issue, too. The point of plain error, of course, is it's a matter of fairness and efficiency for the district court. If this truly was not the intent of the parties, this could have been raised with the district court. We could have addressed this in the district court. It never was. So that's all the more reason, again, that plain error applies. I'm happy to answer any other questions. I think I've said everything I'd want to say. I think what the court should do is say that plain error applies and affirm. I think if the court doesn't want to get into plain error, and I'm happy to answer questions about that, the oldest case that's cited, which is the controlling case, is the Inman case from 2005. So Inman is the oldest case. Under the rule of ordinariness, it applies. But regardless of what standard applies, there simply is no error here. The defendant agreed to pay restitution for all three robberies. The defendant signed a payment plan well after the fact, indicating his agreement to this. You're repeating yourself, Mr. Stokes. I will sit down, Your Honor. We ask the court to affirm. Thank you. Thank you. Mr. Brown, I know you've briefed it, but once again, go into how you avoid plain error review here. Certainly, Your Honor. And I'd actually like to begin on that point with the last point Mr. Stokes made. So he referred to the rule of orderliness, and he indicated that Inman is the oldest published decision on this issue. Now, that may be true. That may be false. The problem is this panel is stuck with the previous published opinion from this court in Swenson and Penn. And Swenson and Penn came out differently on that issue. They determined that when we were talking about the illegality of a restitution order, we applied de novo review to that question of what is the statutory maximum. But what about the failure to object to page – to ROA 235 of the PSR that says, the defendant agreed to pay restitution for the losses resulting from other subway restaurant robberies and goes through the detail, and there was no objection to that? What about that? That's a fair point, Your Honor. My response is this. That was not a – this court is not bound by a probation officer's suggestion concerning the legality of a restitution order. And if you go through Swenson, if you go through Penn, if you go through the case law applying de novo review – Well, but the defendant agreeing to it. So this isn't just I, the probation officer, am finding what is legal. This is saying the defendant agreed to, and the defendant didn't protest that and say, no, no, no, no. I only did if it falls under the relevant conduct in the sentencing guideline, you know, 1D, 1.3, whatever, which is exactly how criminal defendants argue. I'm joking on that one. None of that was raised. So why isn't that question plain error, even if you're correct on the other argument about plain error? Well, I think that gets down to the difference between waiver and forfeiture, Your Honor. And I think the failure to object to a statement like that in the PSR may result in a forfeited error for plain error. But we certainly haven't waived it. The failure to object just isn't specific enough to do that work, I guess would be my response. But doesn't that kind of circle us back to my notion that relevant conduct could be what the hot dog seller thinks it is, which is things I've done that matter here. That's relevant. That's not the definition of the sentencing guideline. I respect that. But why wouldn't that support that notion that you could have one word that means more than one thing? Well, so every time the parties brought up relevant conduct at Below, they did so with reference to 1B1.3. And we know that because we had a series of back-and-forth objections in the PSR addendum. And we all agreed that 1B1.3 applied, and the district court applied it faithfully. Because my colleague Below withdrew her objection at sentencing, the district court then adopted the PSR addendum, which made exactly the relevant conduct findings that we presented to the court, which is that the other subway restaurants did not qualify. And working our way back to the plea agreement, we've talked a lot about Paragraph 4, which deals with the concurrent versus consecutive on the pending subway robbery in Tarrant County. The point there is that we never see the word relevant conduct in that paragraph. So that establishes that the parties knew how to address the other subway robberies without incorporating the concept of relevant conduct, and in fact did so at another point in the agreement, which is a point in my favor with regard to relevant conduct having its fixed legal meaning when used elsewhere in the same document. I'd also note that with regard to that first paragraph— But your position is not that we can never construe the same word differently in the same contract because things can mean something different sometimes even in the same contract, right? That is without a doubt true, Your Honor, but in this case it means the same thing both times. And I think the structure of that clause helps support my argument. But the fact that neither his lawyer nor him seem to know what 1B1.3 said, how does that support your argument that that's what they agreed to, particularly given this PSR quote that I just made? So if we look at the nature of the arguments that they make concerning the extent of relevant conduct, they're not throwing 1B1.3 out the window. They're just misapplying it and the district court corrects them at the very end of the sentence hearing. So 1B1.3 is still the bedrock definition that we're applying throughout. And with regard to that first sentence in paragraph 6, we have a nonrestrictive clause that includes the word relevant conduct and then right after that includes the words other subway restaurant robberies. The final point on that is the other subway restaurant robberies aren't an adjective that's modifying the term relevant conduct. What's actually happening is the term relevant conduct is serving as a gateway such that the agreement only reaches that final noun phrase after passing through relevant conduct, the meaning of which is— But doesn't the word including—so it says criminal conduct, comma, including. So if I said I really respect my colleagues, including Judges Smith and Barksdale, that doesn't mean I disrespect the other colleagues, at least I hope it doesn't in that sentence. May I answer, Judge Smith? Thank you. So the nonrestrictive clause is still doing work in the sentence, in your hypothetical and the sentence that we have here in the plea agreement in that if the clause were not there, we just had criminal conduct, I agree. I'd have a much harder argument. I might have filed an Anders brief in this case because then there would be an ambiguity in the plea agreement. My argument is by reincorporating relevant conduct into paragraph 6, the parties have made plain what appears already in paragraph 6. Well, but they used the word relevant, but they also used the word including, so— Well, that's fair, Your Honor, but again, we have a series of nouns, criminal conduct, relevant conduct, other subway rush-on robberies, and they're connected by a series of verbs. My argument is it's a series of concentric circles and that the agreement only includes the final phrase, other subway rush-on robberies, if they work their way through relevant conduct, which we know they are not given the record in this case. That's all I have, Your Honor. Thank you. Yes, thank you, Mr. Brown. Your case is under submission. Court will take a brief recess before hearing the final case.